UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PRASAD CHALASANI,

                             Plaintiff,

   -against-

MARYELLEN ELIA, COMMISSIONER OF
EDUCATION STATE OF NEW YORK,
NEW YORK STATE BOARD OF REGENTS
AND STATE EDUCATION DEPARTMENT
COMMITTEE ON THE PROFESSIONS;
MARY T. BASSETT, ACTING COMMISSIONER
OF DEPARTMENT OF HEALTH, ALBANY NYS;
HOWARD A. ZUCKER, FORMER
COMMISSIONER OF HEALTH, STATE OF
NEW YORK; KEITH W. SERVIS, DIRECTOR,
OFFICE OF PROFESSIONAL MEDICAL
CONDUCT (OPMC), DOH; KATHY HOCHUL,
THE GOVERNOR, STATE OF NEW YORK,

                            Defendant(s).
----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
**22 CV 794 (EK)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff Prasad Chalasani brings this *pro se* action alleging defendants violated his civil rights under 42 U.S.C. § 1983. Plaintiff seeks declaratory and injunctive relief, as well as damages. Defendants move to dismiss plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(2) for lack of personal jurisdiction, 12(b)(5) for insufficient service of process, and 12(b)(6) for failure to state a claim. The Honorable Eric Komitee referred the motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that defendants' motion should be granted and plaintiff's Complaint should be dismissed.

## BACKGROUND

For the purposes of defendants' motion to dismiss, all well-pleaded allegations in plaintiff's Complaint are taken as true and all inferences are drawn in his favor.[1]

Plaintiff was licensed to practice as a physician in the State of New York in January 1972. Complaint at 1 (hereinafter "Compl."). His medical license was revoked in 2008.[2] Compl. at 8. Plaintiff applied for the restoration of his medical license in 2012, but his application was denied in 2017. Plaintiff challenges that denial as violation of his right to due process.[3]

---

[1] The Court also considered plaintiff's and defendants' exhibits that contained documents plaintiff relied on or incorporated by reference in his Complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (a court ruling on a motion to dismiss may consider documents provided by a defendant if "plaintiff has actual notice of all the information in the [defendant's] papers and has relied upon these documents in framing the complaint") (citation and quotation omitted); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016) ("A complaint is deemed to include any written instrument attached to it as an exhibit or . . . documents incorporated in it by reference.") (citation and quotation omitted). Additionally, the Court considered factual allegations made in plaintiff's opposition papers. Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

[2] Plaintiff already litigated the constitutionality of his license revocation before this Court in Chalasani v. Daines, No. 10-CV-1978, 2011 WL 4465564 (E.D.N.Y. June 30, 2011), report and recommendation adopted, 2011 WL 4465408 (E.D.N.Y. Sept. 26, 2011) (hereinafter "Chalasani I"). In Chalasani I, plaintiff sued Keith Servis, the former director of the Office of Professional Medical Conduct; the former commissioners of the New York State Department of Health Richard Daines and Antonia Novello, and the former governor David Paterson. Plaintiff alleged that defendants violated his due process rights in suspending and ultimately revoking his medical license. He sought money damages and injunctive relief, including reinstatement of his medical license. Chalasani I at *1. Plaintiff's claims against defendants in their official capacities were dismissed as barred by sovereign immunity; plaintiff's individual-capacity claims against defendant Novello were dismissed for failure to sufficiently allege her personal involvement; plaintiff's due process claims were dismissed as time-barred; plaintiff's facial and as-applied challenges to the constitutionality of physician misconduct hearings were dismissed for failure to state a claim; and plaintiff's due process claim regarding his FOIL request was likewise dismissed. Chalasani I at *1-10.

[3] Plaintiff filed Chalasani I in 2011, before his 2012 application to restore his license was denied. Despite plaintiff's contention that he does not seek to "relitigate or review" the underlying license revocation in this action, Plaintiff's Opposition ¶ 7, 76 (hereinafter "Opp."), plaintiff repleads facts from Chalasani I regarding the disciplinary processes that resulted in his license revocation.
Plaintiff's instant complaint includes the following. In January 2002, the Office of Professional Medical Conduct ("OPMC") informed plaintiff that he was under investigation for suspected misconduct related to his treatment of two patients at North Shore University Hospital in 2000. Compl. at 8. Both patients died. Id. Plaintiff "contended that he was not involved in the incidents of substandard medical practice that led to complications of care." Id. In August 2003, the Department of Health's Board of Professional Medical Conduct ("BPMC") charged plaintiff with eleven counts of professional misconduct, including negligence on more than one occasion, failure to maintain records, and fraudulent practice. Compl. at 8; ECF No. 15-1 at 10-15. Plaintiff asserts these charges "were made without investigating the care [he] had provided to these two patients." Compl. at 8. In November 2003, plaintiff, with counsel, entered into a consent agreement to resolve the charges. Id. Plaintiff agreed to not contest the negligence allegations. ECF No. 15-1 at 5. Plaintiff accepted a fine and agreed to carry increased malpractice insurance and to undergo three years of probation. Compl. at 8; ECF No. 15-1 at 16-18. Plaintiff states that he was

Defendants in this action are the former Commissioner of the New York State Education Department Education ("SED") MaryEllen Elia; the former Commissioner of the New York State Department of Health ("DOH") Mary T. Bassett; the former DOH Commissioner Howard Zucker; the former Director of the Office of Professional Medical Conduct ("OPMC") Keith Servis; and Governor Kathy Hocul. Plaintiff names defendants in their personal and official capacities. Compl. at 1.

In September 2012, plaintiff applied for restoration of his medical license with the Committee on the Professions ("COP"). Compl. at 2, 9. Defendant Servis sent a letter to the COP opposing restoration of plaintiff's license. Compl. at 5-6. The Office of Professional Discipline conducted an investigation and a Peer Review committee held a hearing on plaintiff's application in January 2014. Compl. at 9. In August 2015, the Peer Review committee issued a report unanimously recommending denial of plaintiff's application. Id. The COP interviewed plaintiff on March 17, 2016 and issued a report recommending denial of his application on September 17, 2016. Compl. at 10. Plaintiff responded to this report on October 11, 2016. Id. On October 12, 2016, the COP issued its final report and recommendation, in which it maintained its original recommendation to deny plaintiff's application. Id. In November 2016, the State Board of Regents (the "Board") voted to deny plaintiff's application for license restoration. Id. On January 20, 2017,

---

coerced into signing the consent order. Opp. ¶ 22. In 2004, plaintiff sought to vacate the order without success. Compl. at 9.

On March 22, 2007, OPMC initiated charges that plaintiff had violated his probation. Compl. at 8, ECF No. 15-2 at 18-20. After a hearing, the BPMC found that plaintiff violated the terms of his probation, including by failing to maintain excess malpractice coverage, failing to comply with the terms of his practice monitoring, and falsely stating that he was not on probation when seeking reappointment to a hospital. ECF No. 15-2 at 9-10. The BPMC suspended plaintiff's license for one year. Compl. at 8, ECF No. 15-2 at 11. On appeal, the Administrative Review Board for Professional Medical Conduct ("ARB") overturned the suspension and instead voted unanimously to revoke plaintiff's medical license, concluding that plaintiff "ignored the second chance he received and engaged in numerous and repeated violations of the Probation Terms." ECF No. 15-3 at 4, 10.

defendant MaryEllen Elia, then-Commissioner of the New York State Education Department, issued an order denying plaintiff's application. Id.

Plaintiff appealed the Board's determination through an Article 78 proceeding in Albany County Supreme Court.[4] Compl. at 10. On November 21, 2017, the Honorable Judith A. Hard dismissed the petition, finding that there was a rational basis to support the Board's decision and that "ample reason" existed to support the unanimous denial. ECF No. 15-5 at 9. The Appellate Division, Third Department affirmed, concluding that the Board's determination was "supported by a rational basis" and not "arbitrary or capricious." ECF No. 15-6 at 4. Plaintiff appealed to the New York State Court of Appeals. Compl. at 6. The Court of Appeals denied plaintiff leave to appeal on November 24, 2020. Compl. at 28. Plaintiff moved to reargue his motion for leave to appeal, and the Court of Appeals denied the motion on April 1, 2021. Compl. at 6, 29.

Plaintiff's application to restore his medical license required him to demonstrate "three Rs": remorse, rehabilitation, and reeducation. Compl. at 2. However, defendants "agreed [remorse] and [rehabilitation] were not required because plaintiff did not admit for [sic] any wrongdoing." Id. To satisfy the reeducation requirement, plaintiff was required to attend pre-approved continuing medical education ("CME") courses, but "all the defendants one time or the other refused to approve those courses and used that as an excuse not to reinstate [his] license." Id. Plaintiff submitted a "10-year record of reeducation" via letter from Winthrop University Hospital, but it was rejected "without explanation." Compl. at 3. Plaintiff sent letter requests to defendants requesting that they prescribe the required CME courses, but those requests were "denied without explanation." Id. at 3.

---

[4] Plaintiff's Article 78 petition named MaryEllen Elia and the State Education Department on the Professions as defendants. ECF No. 15-5 at 2.

Specifically, plaintiff sent a letter to defendant Mary T. Basset, dated December 20, 2021, requesting that Basset review his case, prescribe CME courses, and recommend reinstatement of his license. Compl. at 4. Basset did not acknowledge the letter or take any action. Id. Plaintiff also sent letters to defendant Howard Zucker requesting that he prescribe CME courses, including a March 5, 2018 letter from Dr. Frank Veith, a vascular surgeon, a July 19, 2016 letter from State Senator Tony Avella, and three letters from attorneys. Id. These letters went unacknowledged. Id. Finally, plaintiff sent a letter dated October 14, 2021 to defendant Governor Kathy Hochul "informing [her] of the injustice" done to him and requesting that she order the DOH, OPMC, and SED to prescribe CME courses for plaintiff. Compl. at 6-7. Plaintiff sent two follow-up letters, but Governor Hochul did not respond. Compl. at 6.

Plaintiff alleges that defendants violated his due process rights[5] when they denied restoration of his medical license. Compl. at 2. Plaintiff further alleges that because defendants did not identify his alleged negligence in the process that led to the revocation of his license, there was no basis to deny the reinstatement of his license. Opp. ¶ 73. Plaintiff claims that defendants violated

---

[5] Plaintiff also alleges that defendants violated his right to equal protection. Compl. at 2. However, plaintiff's Complaint does not plausibly allege an equal protection deprivation. "To state a claim under the Equal Protection Clause, Plaintiffs must allege (1) that they were selectively treated compared to other similarly situated citizens, and (2) that such selective treatment was based on impermissible considerations such as race, religion, the intent to inhibit or punish the lawful exercise of constitutional rights, or malicious intent to injure a person." O'Bradovich v. Vill. of Tuckahoe, 325 F. Supp. 2d 413, 430 (S.D.N.Y. 2004) (citing Crowley v. Courville, 76 F.3d 47, 52–53 (2nd Cir. 1996)). A plaintiff may also allege an equal protection deprivation through a "class of one" theory, which requires plaintiff to show that he was intentionally treated differently than similarly-situated individuals, and that this unequal treatment lacked a rational basis or was motivated by animus. Id. (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam), Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)).
Plaintiff states that he "belongs to a protected class" Opp. ¶ 67, and vaguely references race-based discrimination. Plaintiff's Article 78 questioned whether defendants' failure to prescribe CME courses "has anything to do with Bias, Racism, violation of Civil Rights" and quoted a 2020 report by Jeh Johnson on racial bias in New York State courts. Compl. at 6-7. However, plaintiff does not allege that he was treated differently than other similarly-situated applicants; that his application was denied based on impermissible considerations; or that defendants' actions lacked a rational basis or were motivated by animus. As such, plaintiff's complaint fails to state a claim under the Equal Protection Clause. See Seabrook v. City of New York, 509 F. Supp.2d 393, 402 (S.D.N.Y. 2007) ("Plaintiffs [sic] equal protection claim must fail in the absence of allegations . . . as to what conduct is at issue, what similarly situated individuals were treated differently, and how the [defendant's] conduct was irrational or motivated by animus.").

his due process rights by failing to respond to his letters which sought information regarding which CME courses plaintiff needed to satisfy the reeducation component of his application. Compl. at 2-4.

The crux of the matter is that plaintiff seeks reinstatement of his medical license. Id. at 1. Plaintiff also seeks an order directing OPMC and DOH to redact "all the unproven, unadjudicated allegations posted on the New York State physician's profile website" and an order compelling defendants to provide him with a copy of OPMC's investigative reports against him. Compl. at 11-12. Finally, plaintiff seeks attorney's fees for a 20-year period, and $237,000,000 in damages. Id.

## PROCEDURAL HISTORY

On February 11, 2022, plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983.[6] ECF No. 1. On March 7, 2022, defendants requested a pre-motion conference to dismiss the Complaint.[7] ECF No. 9. Plaintiff opposed the request. ECF No. 11. The Court determined that a pre-motion conference was not necessary and set a briefing schedule. Electronic Order dated April 29, 2022. Defendants now move to dismiss plaintiff's Complaint ("Defs' Mot."). ECF No. 13-15. Plaintiff opposes the motion ("Opp."), ECF No. 19, defendants have replied ("Reply"), ECF No. 20, and the motion has been referred to me for a Report and Recommendation.

## DISCUSSION

### I.   Standard of Review

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly,

---

[6] Plaintiff paid the filing fee to commence this action and was therefore responsible for service of the summons and Complaint upon defendants. ECF No. 5.
[7] Defendants' request references an "Amended Complaint." However, plaintiff has not filed an amended complaint.

6

550 U.S. 544, 555–56 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with" a defendant's liability or "speculative," Twombly, 550 U.S. at 555–56; they must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

Nevertheless, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citation omitted)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted)).

Defendants move for dismissal on the grounds that: (1) the Court lacks personal jurisdiction over the defendants because plaintiff failed to properly serve them; (2) plaintiff's claims under 42 U.S.C. § 1983 are time-barred; (3) plaintiff's claims are barred by the Eleventh Amendment to the extent they are brought against state officials in their official capacity; (4) the Rooker-Feldman doctrine bars plaintiff's claims because he seeks to have this court review state court decisions upholding the Education Commissioner's determination; (5) the Complaint fails to state a claim because plaintiff received due process from the SED and in his state court appeals; and (6)

7

plaintiff's request for documents from the DOH and OPMC under the federal FOIA statute fails to state a claim because FOIA only applies to federal agencies. For the reasons discussed below, defendants' motion to dismiss plaintiff's complaint should be granted.

## II.     Statute of Limitations

Defendants argue that plaintiff's Section 1983 claims are time-barred. Deft's Mot. at 8. The Court agrees.

Claims brought pursuant to 42 U.S.C. § 1983 are governed by the limitations period for personal injury suits under the laws of the state where the cause of action arises; in New York, that period is three years. See Owens v. Okure, 488 U.S. 235, 249-51 (1989); Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). A cause of action under 42 U.S.C § 1983 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (citation omitted). In determining when a plaintiff's Section 1983 claim accrues, "the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act becomes [sic] painful." See Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (emphasis in original) (quoting Chardon v. Fernandez, 454 U.S. 6, 8 (1981)).

Plaintiff alleges defendants violated his right to due process when they denied his application to restore his medical license. Compl. at 1. The Commissioner of Education issued the order denying plaintiff's application on January 20, 2017, pursuant to a unanimous vote taken by the Board of Regents (the "Board") on November 15, 2016. Compl. at 10; ECF No. 15-4. The Board was the final administrative decision-maker regarding plaintiff's application. See N.Y. Educ. Law § 6510(4),(5) (McKinney 2012). The SED informed plaintiff of the Commissioner's order by letter dated February 1, 2017, and advised plaintiff that the order went into effect five days after the date of the letter. ECF No. 15-4. Thus, plaintiff's claims accrued on or before

8

February 6, 2017, when the order denying his restoration application went into effect. See, e.g., Jaghory v. N.Y. State Dep't of Educ., No. 95-CV-3478, 1996 WL 712668, at *5 (E.D.N.Y 1996), aff'd, 131 F.3d 326 (2d Cir. 1997) (finding that plaintiff's Section 1983 claim accrued when the state denied his application for a medical license)[8]; Clavin v. Cnty. of Orange, 38 F. Supp.3d 391, 396-397 (S.D.N.Y 2014) (holding that electrician's Section 1983 due process claim accrued on the date of denial of his license application). Plaintiff filed the instant action on February 11, 2022—over five years after his application to restore his license was denied. Therefore, plaintiff's claims are time-barred.

     Plaintiff argues that his claims are timely because he "continued his appeals process to exhaust all the options available in [New York State] even after January 2017," culminating in the New York State Court of Appeals' denial of leave to reargue on April 1, 2021. Opp. ¶ 120. However, plaintiff's pursuit of his state remedies does not toll the statute of limitations for a Section 1983 claim. Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007) (rejecting plaintiff's argument that the statute of limitations should be tolled for the period during which he pursued an Article 78 proceeding in state court); Harvey v. Melville, No. 18-CV-7043, 2020 WL 5123410, at *4 (S.D.N.Y. Aug. 31, 2020) ("The Second Circuit has consistently rejected the notion that the statute of limitations on Section 1983 claims is tolled until such time as related state court proceedings have concluded."). Plaintiff's letters to defendants Basset, Zucker, and Governor Hochul likewise do not toll the statute of limitations. See, e.g., Legutko v. Local 816, Intern. Broth. Of Teamsters, 853 F.2d 1046, 1055 (2d Cir. 1988) (holding that informal letter writing is not a proper basis for tolling statute of limitations applicable to labor disputes); Yip v. Bd. of Trustees of State Univ. of New York, No. 3-CV-959C(SR), 2004 WL 2202594, at *5 (W.D.N.Y. Sept. 29,

---

[8] The Clerk of Court is respectfully directed to send plaintiff the attached copies of the unreported cases cited herein.

9

2004), aff'd sub nom. Yip v. Bd. of Trustees of State Univ. of N.Y., 150 F. App'x 21 (2d Cir. 2005) (finding that plaintiff's claims were time-barred despite plaintiff's "ongoing protests, objections, requests for reconsideration, and persistent demands for administrative and judicial review [that] have caused the dispute to linger into the present day").

Plaintiff also alleges that his claims are timely because defendants' actions constitute a continuing violation. Opp. at ¶ 121. When a plaintiff experiences a continuous practice and policy of discrimination, that plaintiff may challenge "all conduct that was a part of the violation, even conduct that occurred outside the limitations period." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994). Second Circuit courts apply the continuing violation doctrine only under "compelling circumstances." Clavin, 38 F. Supp.3d 391 at 397 (quoting Jaghory, 1996 WL 712668, at *5). To establish a continuing violation, a plaintiff must demonstrate both a discriminatory policy or practice and a "non-time-barred action taken in furtherance of that policy." Harvey, 2020 WL 5123410 at *4. However, the continuing violation doctrine does not render a stale claim timely merely because a plaintiff continues to feel the impact of a discriminatory act. See Blankman v. County of Nassau, 819 F. Supp. 198, 207 (E.D.N.Y 1993) ("The mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation.").

Plaintiff fails to allege facts to establish a continuing violation. See Opp. ¶ 120-124; Jaghory, 1996 WL 712668, at *5 (finding that neither the denial of plaintiff's objections to the denial of his medical license application, nor the rejection of his subsequent renewal application, constituted a continuing violation). Plaintiff's claims regarding the denial of his application to restore his medical license are time-barred, and defendants' motion to dismiss plaintiff's complaint should be granted on this ground.

### III. Due Process Violation

Even if plaintiff's claims were timely filed, defendants' motion to dismiss would nonetheless be granted because plaintiff fails to allege that defendants violated his rights to due process. To assert a due process violation under Section 1983, a plaintiff must plead that "(1) he possesses a liberty or property interest protected by the Constitution or a federal statute, and (2) he was deprived of that liberty or property interest without due process." Clavin, 38 F. Supp.3d at 396 (citing Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002)). The Complaint does not plausibly allege either requirement.

    a. Property Interest

First, plaintiff has not plausibly alleged a protected property interest in the restoration of his revoked medical license.[9] To establish a constitutionally protected interest in a benefit, a plaintiff must allege a legitimate claim of entitlement to it, as opposed to an "abstract need or desire" for it or "unilateral expectation" of it. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). In the context of government-issued licenses, a legitimate claim of entitlement exists where "under applicable state law, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." Ace Partners, LLC v. Town of E. Hartford, 883 F.3d 190, 195 (2d Cir. 2018) (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 504 (2d Cir. 2001)). As such, a plaintiff may possess a property interest in a license when "the issuing authority lacks discretion to deny the permit," or, in other words, when the authority "is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met." Id. If the issuing authority has discretion to grant or deny a

---

[9] While plaintiff may have had a property interest in his medical license prior to its revocation, "the state action at issue here . . . is not the revocation of the medical license but the failure to restore it, and it is an entirely different question whether an individual has a property interest in a medical license that has been revoked." Harris v. Mills, 478 F. Supp.2d 544, 549 (S.D.N.Y. 2007), aff'd, 572 F.3d 66 (2d Cir. 2009).

11

license renewal application, the applicant lacks a constitutionally protected property interest in the license renewal. Schneider v. Chandler, No. 16-CV-6560, 2018 WL 770395, at *6 (S.D.N.Y. Feb. 7, 2018); see also Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) ("A clear entitlement, and, in turn, a constitutionally protected property interest [in a permit], exists only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.") (citation and internal quotation omitted).

The Board of Regents voted unanimously to deny plaintiff's application for reinstatement of his medical license. Compl. at 10. Under New York Education Law §§ 6510 and 6511, the Board enjoys "considerable discretion concerning matters of professional misconduct, including the . . . restoration of medical licenses." Nehorayoff v. Mills, 95 N.Y.2d 671, 674 (2001). Restoration of a revoked license is far from virtually assured. Instead, restoration is "permissive" and "granted only in rare cases where the merit of the applicant is clearly established to the satisfaction of the Board." Id. (citation and internal quotations omitted). Plaintiff's allegations that he was not required to demonstrate remorse and rehabilitation, Opp. ¶ 8, 10, 14, and that he was prevented by defendants from enrolling in the CME courses needed to demonstrate reeducation, Compl. at 1, are immaterial because the Board was "not required to weigh or consider any particular factors" to deny plaintiff's application. Nehorayoff, 95 N.Y.2d at 674; see also Patin v. New York State Dept. of Educ., 174 A.D.3d 1080, 1081 (App. Div. 3d Dep't 2019) ("The burden of proof is on the applicant to present evidence so ineluctable in its implications that it would compel affirmative action from the Board which has discretion to restore or to refuse to restore.") (internal quotation marks and citations omitted). Plaintiff's allegation that there was no basis to deny the reinstatement of his license because "defendants did not identify his alleged negligence

12

in the process that led to the revocation of his license"[10] is without merit for the same reason. Opp. ¶ 73. Given the Board's significant discretion, plaintiff has no claim of entitlement to the restoration of his medical license, and therefore plaintiff fails to allege a protected property interest in the restoration of his revoked license.

   b. Post-deprivation Remedy

Even if plaintiff had plausibly alleged a property interest in the restoration of his revoked license, the complaint would still fail to state a claim that defendants violated his right to due process because plaintiff received due process through his Article 78 proceeding.

In the context of restoration of a medical license, the opportunity to pursue an Article 78 proceeding is an "adequate and meaningful post-deprivation remedy." Harris v. Mills, 478 F. Supp. 2d 544, 549–50 (S.D.N.Y. 2007), aff'd, 572 F.3d 66 (2d Cir. 2009); see also Levy v. Cohen, No. 9-CV-2734, 2010 WL 4065607, at *4 (E.D.N.Y. Oct. 14, 2010), aff'd, 439 F. App'x 30 (2d Cir. 2011) ("[I]n the medical license revocation context, the opportunity to pursue an Article 78 proceeding in New York State court constitutes a constitutionally sufficient post-deprivation remedy."); Chalasani, 2011 WL 4465564, at *9 ("[A]n Article 78 proceeding is an adequate state procedure for protecting the property interest in a professional license.") (citing Blake v. Ambach, 691 F. Supp. 651, 655 (S.D.N.Y. 1988). The Second Circuit has confirmed "the constitutional adequacy of this remedy." Harris, 478 F. Supp. 2d at 549–50 (citing Hellenic Am. Neighborhood

---

[10] Plaintiff alleges throughout the Complaint that defendants never identified his alleged negligence. Plaintiff also alleges that several defendants have been charged with corruption, and that this somehow shows that his rights were violated. Compl. at 4, 35. However, defendants' alleged corruption has no bearing on plaintiff's claims here. It is evident that plaintiff still fails to accept that he entered into a consent order, with assistance of a lawyer, in which he agreed to not contest the negligence allegations brought against him. ECF No. 15-1. The Hearing Committee that recommended suspension of plaintiff's license found that plaintiff "did not fully accept or appreciate his responsibility to adhere to the terms of the Consent Order" and that his "own testimony and writings reflect his ongoing failure to accept the terms of probation and how his lack of acceptance led him to repeatedly violate the terms of the Consent Order." ECF No. 15-2 at 9.

Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996)). An Article 78 proceeding is "adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit." Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881 (citing Hudson v. Palmer, 468 U.S. 517, 535 (1984)).

The Board of Regents' disciplinary review procedure entitled plaintiff to challenge the Board's finding in an Article 78 proceeding in state court. See N.Y. Educ. Law § 6510(5) (McKinney 2012); Levy, 2010 WL 4065607 at *4. Plaintiff did exactly that. After the Board voted to deny his application for license restoration and the Commissioner of Education issued the resulting order, plaintiff commenced an Article 78 proceeding in Albany County Supreme Court to challenge the determination. Compl. at 10. The state court dismissed the petition, finding that there was a rational basis for the Board's decision. ECF No. 15-5 at 9. The Appellate Division, Third Department affirmed, concluding that the Board's determination was "supported by a rational basis" and "not arbitrary or capricious." ECF No. 15-6 at 4. The New York State Court of Appeals denied plaintiff's motion for leave to appeal and denied plaintiff's motion to reargue. Compl. at 6. Like plaintiff's prior Article 78 proceeding challenging his 2008 license revocation, plaintiff had an "open avenue for review of all his constitutional claims" via his Article 78 proceeding. Chalasani, 2011 WL 4465564, at *9 (citation omitted).

Even though plaintiff did not get the remedy he sought, defendants' motion to dismiss plaintiff's due process claim should be granted because New York provides a meaningful post-deprivation remedy via an Article 78 proceeding.

14

### IV. Other Grounds for Dismissal

Defendants raise four other grounds which entitle them to dismissal of plaintiff's complaint. As plaintiff's complaint is time-barred and does not state a claim upon which relief could be granted, the Court need not analyze the four remaining grounds in great length.

First, this Court lacks personal jurisdiction over defendants because plaintiff improperly served defendants solely by mail.[11] ECF No. 4; Opp. ¶ 118. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006) (quoting Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). Despite plaintiff's claim that the Pro Se office told him that he could serve defendants by ordinary mail, Opp. ¶ 118, plaintiff was required to follow the Federal Rules of Civil Procedure.[12] Straehle v. Ina Life Ins. Co., No. CV-01-7180, 2005 WL 3388612, at *1 (E.D.N.Y. Dec. 8, 2005) ("Although *pro se* litigants should

---

[11] Generally, "the Court must first address the preliminary questions of service and personal jurisdiction" when a defendant moves for dismissal under Rules 12(b)(2), (5), and (6). Yerdon v. Poitras, No. 21-CV-565, 2023 WL 1797995, at *2 (N.D.N.Y. Feb. 7, 2023) (quoting Styles v. Westchester Cnty., No. 18-CV-12021, 2020 WL 116604, at *4 (S.D.N.Y. Mar. 10, 2020)). Here, the Court addressed the 12(b)(6) grounds for dismissal first, to make clear to plaintiff that the Complaint is being dismissed not only for failure to follow procedural rules, but for the same substantive reasons that resulted in dismissal of his earlier action before this Court. See Chalasani v. Daines, No. 10-CV-1978, 2011 WL 4465564 (E.D.N.Y. June 30, 2011), report and recommendation adopted, 2011 WL 4465408 (E.D.N.Y. Sept. 26, 2011) (dismissing complaint as time-barred and for failure to state a cause of action).

[12] Under Federal Rule of Civil Procedure 4(e), an individual may be served by delivering a copy of the summons and complaint to the individual personally, by leaving a copy at the individual's dwelling or usual place of abode with someone of suitable age or discretion who resides there, or by delivering a copy to an agent authorized by law or by appointment to receive service of process; or, by any other method of service allowed by state law in the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e). Under New York law, an individual may be served by personal service, or by delivering the summons to a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode of the person to be served, and then mailing the summons to the last known residence or place of business. N.Y.C.P.L.R § 308(2).
Rule 4 also provides that a state, which includes a state officer being sued solely in an official capacity, must be served by (a) "delivering a copy of the summons and of the complaint to its chief executive officer" or (b) "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2)(A)–(B). Under New York law, service on a state officer sued in an official capacity is accomplished by "delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section." N.Y.C.P.L.R § 307(2).

be afforded latitude . . . they generally are required to inform themselves regarding procedural rules and to comply with them.") (internal quotation marks and citation omitted). Plaintiff does not dispute that he served defendants by mailing the summons and complaint to their current and former offices in Albany, New York. The Federal Rules of Civil Procedure do not authorize service solely by ordinary mail, nor do any of the relevant provisions of New York law. As such, plaintiff's attempt to serve defendants with process did not comply with the Federal Rules of Civil Procedure or New York law, and defendants' motion to dismiss for lack of personal jurisdiction should be granted.

Second, plaintiff's claims for money damages against defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution, which provides sovereign immunity for the state when sued in federal court. Plaintiff sues defendants in both their personal and official capacities, Compl. at 1, and seeks $237,000,000 in damages. Compl. at 11-12. However, "it is well established that a suit seeking money damages from a State official in his official capacity is barred by the Eleventh Amendment." Chalasani v. Daines, No. 10-CV-1978, 2011 WL 4465564, at *3 (E.D.N.Y. June 30, 2011), report and recommendation adopted, No. 10-CV-1978, 2011 WL 4465408 (E.D.N.Y. Sept. 26, 2011) (quoting Quartararo v. Catterson, 917 F. Supp. 919, 931 (E.D.N.Y.1996)); see also Hafer v. Melo, 502 U.S. 21, 25–26 (1991); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993). Plaintiff's opposition to dismissal on this ground discusses qualified immunity, which is distinct from sovereign immunity.[13] See Opp ¶¶ 125-144. While plaintiff correctly notes that sovereign immunity bars only his claims for monetary damages against defendants in their official capacities, Opp. ¶ 145, plaintiff's remaining

---

[13] Qualified immunity is a legal doctrine that protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation omitted).

claims for injunctive relief and money damages against defendants in their personal capacities cannot proceed because they are time-barred and fail to state a cause of action. *Supra* at 8-14.

Third, defendants' motion to dismiss this case under the Rooker-Feldman doctrine should be granted. Plaintiff improperly seeks to challenge his unsuccessful state court proceedings. The Rooker-Feldman doctrine bars "cases brought by state court losers complaining of injuries caused by state-court judgments[.]" Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). Under this doctrine, "a federal district court may not review collateral attacks upon a state court determination." Anghel v. New York State Dep't of Health, 947 F. Supp. 2d 284, 294 (E.D.N.Y 2013), aff'd, 589 F. App'x 28 (2d Cir. 2015) (citation omitted) (dismissing plaintiff's complaint that sought review of an Article 78 proceeding upholding revocation of his medical license); see also Harris v. N.Y. State Dep't of Health, 202 F. Supp. 2d 143, 165 (S.D.N.Y. 2002) ("[Plainitff's] efforts to relitigate in this Court the revocation of his medical license are barred by application of the Rooker-Feldman doctrine.").

Plaintiff argues that the Rooker-Feldman doctrine is inapplicable because he names different defendants in the instant action. Opp. ¶¶ 79, 89. However, in determining whether the Rooker-Feldman doctrine bars review of a case, courts focus on whether the cases share the same central issue, not the same defendants. Harris, 202 F. 2d at 166 ("[T]he *Rooker–Feldman* doctrine . . . applies to federal law claims brought in federal courts that were actually litigated or inextricably intertwined with the merits of the same matter previously adjudicated by the state court."). The central issue in plaintiff's Article 78 proceeding was whether defendants violated his due process rights in denying his application to restore his medical license—the same issue plaintiff raises in the instant Complaint. Plaintiff also argues that his Complaint should proceed because the state court did not properly consider his due process claims. Opp. ¶ 86-91. Plaintiff in effect requests

17

this Court to examine the state court rulings and grant plaintiff the relief he sought in state court: restoration of his medical license. "It is precisely this form of stark second-guessing and undue federal intrusion that the Rooker-Feldman doctrine intended to overcome." Anghel, 947 F. Supp. 2d at 295.

Finally, plaintiff seeks an order directing defendants to "provide a copy of all the investigative reports held by OPMC/DOH . . . and the Governor's office" pursuant to the Freedom of Information Act (FOIA) and the Privacy Act of 1974.[14] Compl. at 12. These statutes only apply to federal agencies. The Department of Health and the Office of Professional Medical Conduct are state agencies and as such, they are not subject to FOIA or the Privacy Act of 1974. Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 484 (2d Cir. 1999) ("[I]t is beyond question that FOIA applies only to federal and not to state agencies"); Duffy v. Evans, No. 11-CV-7605, 2012 WL 4327605, at *6 n.4 (S.D.N.Y. Sept. 19, 2012) ("The Privacy Act does not apply . . . to the conduct of state agencies.").

    a. **Leave to Amend**

"Ordinarily, *pro se* plaintiffs are granted opportunities to amend their complaints freely, however, courts need not afford plaintiffs an opportunity to amend where it is clear that any attempt to amend the complaint would be futile." Kimmel v. New York State Assembly, No. 20-CV-1074, 2020 WL 6273975, at *3 (E.D.N.Y. Oct. 26, 2020) (citing Cruz v. Gomez, 202 F.3d 593, 597–98 (2d Cir. 2000)). Here, as plaintiff's claims are plainly time-barred, amendment would be futile. I therefore respectfully recommend that plaintiff should not be afforded leave to amend.

---

[14] Plaintiff also invokes section 301 of the New York State Administrative Procedure Act, Opp. ¶ 41, and the rules of the Board of Regents. Opp. ¶ 153. The former requires agencies to make summaries of their rules governing adjudicatory proceedings and appeals available to the public upon request, N.Y.S. Admin. Pro. § 301(3), and the latter requires the director of the Office of Professional Discipline to provide the results of a disciplinary investigation "to the panel of the appropriate professional State Board for its review." 8 N.Y.C.R.R. § 28-2.4. Neither provision supports plaintiff's argument that he is entitled to the requested documents.

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant defendants' motion and plaintiff's Complaint should be dismissed. Plaintiff has been challenging the loss of his medical license for the past fifteen years. He will undoubtedly be disappointed in this Court's decision. While the Court is not unsympathetic to plaintiff's loss of his ability to practice medicine, a pursuit that he evidently loved, filing serial lawsuits against defendants will not bring him relief. No one will be able to bring plaintiff peace regarding this loss but himself. *Medice, cura te ipsum*: physician, heal thyself.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                                      /S/
                                         LOIS BLOOM
                                         United States Magistrate Judge

Dated: March 1, 2023
       Brooklyn, New York